## Ligon, et al. v. Bolinger's Exor., et al.

### (Decided March 3, 1922.)

### Appeal from Graves Circuit Court.

1. Wills—Evidence as to Contents.—Evidence as to the contents of a will which had not been seen for thirty-five years should be admitted with caution, and the testimony of witnesses who did not profess to give the exact phraseology of the will but attempted to give their construction of it, should not be permitted to override relevant facts or circumstances tending to establish a contrary construction.

2. Wills—Evidence as to Contents.—Where a contest as to the contents of a will, which had not been seen for more than thirty years, involved the question of whether the wife of the testator took an absolute estate in the income, or merely a support therefrom with the accumulations passing to the remaindermen under the will, the construction placed on the will by the interested parties, over a course of more than a quarter of an century, is to be given greater weight than the testimony of witnesses who casually examined it thirty years before and who did not undertake to give the phraseology of the will but merely testified as to their construction of it.

3. Wills—Evidence—Finding of Chancellor.—Evidence examined and held to warrant the finding by the chancellor that the will in dis-

pute devised to the wife of the testator an absolute estate in the income from the corpus.

STANFIELD & STANFIELD for appellants.

L. R. SMITH and J. C. SPEIGHT for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This suit was brought by the collateral relatives of William E. Bolinger to recover about $12,000.00 from the devisees of Nannie S. Bolinger.

In 1875 William E. Bolinger, husband of Nannie S. Bolinger, died leaving a will which was duly probated and recorded in the Graves county court clerk's office. The original will and the recorded copy were destroyed when the court house in Mayfield was burned in 1887. An authenticated copy cannot be found.

William E. Bolinger had no children. He left an estate consisting of capital stock in the State National Bank of Paducah and the First National Bank of the same city. The corpus of the estate increased in value until, at the time of Nannie Bolinger's death, it amounted to approximately $10,000.00. There is no controversy in this suit as to the distributable rights in that fund. Nannie Bolinger, after the death of her husband, was paid the dividends on the stocks as they were declared, and at her death in April, 1918, she left about $12,000.00, which she disposed of by will. This sum, with the exception of $800.00 which she received from the estate of a relative, represented accumulations of income from the corpus of her husband's estate. The evidence shows that her annual income ranged from $600.00 to $900.00; that after her husband's death she resided with his brother and after the brother's death with his wife and son; that she paid them for her living expenses, and that her annual expenditures amounted to about $300.00. It also shows that she was a woman of fine character, having the esteem and affection of the relatives of her deceased husband.

William Bolinger nominated his brother, Geo. Bolinger, executor of his will, and Geo. Bolinger acted as such until his death in 1895. Then Thomas Ligon, a brother-in-law, qualified as administrator de bonus non and he acted in that capacity until 1905. In that year he made a final settlement of his accounts with the county judge of Graves county, and his son, G. W. Ligon, then qualified as administrator and continued as such until the death of Nannie Bolinger in 1918. G. W. Ligon is one of the plaintiffs (now appellants) in this suit, and the others

.are a sister and the descendants of brothers and sisters
of William Bolinger.

Appellants are claiming the devised estate of Nannie
Bolinger on the ground that under the will of her hus-
band she took only so much of the income and corpus of
his estate as might be necessary to support and maintain
her during her life or widowhood. It is admitted that the
will provided that she should have the right to expend the
entire income and to invade the corpus, if necessary to
support and maintain herself during her life or widow-
hood, but it is contended that by the terms of the will
such of the estate as remained at her death, including the
accumulated income, passed under the will to his brothers
and sisters, or their heirs at law. For appellees it is con-
tended that the will gave to Nannie Bolinger an absolute
estate in all income from the corpus, with the right to use
the corpus if necessary for her maintenance and support.
The court below sustained the latter contention and dis-
missed the petition.

Decisions of this court and other authorities are cited
by counsel on each side as relating to the contentions ad-
vanced. The relevancy and controlling effect of those
authorities, as applied to the assumed language of the
will, are not doubted, for it was within the power of Wil-
liam Bolinger to dispose of his property in either way,
that is to say he could have provided for the support and
maintenance of his wife out of the income, and corpus if
necessary, devising the remainder with all accumulations
of income to his brothers and sisters; or he might have
given her a life estate in the corpus with an absolute right
to the income so long as she should live or until she should
remarry. What might otherwise have been a simple ques-
tion is rendered difficult by reason of the fact that the
will is not before the court and has not been seen since
1887. Furthermore, the evidence pertaining to its con-
tents has little probative value, since the witnesses at-
tempting to testify on the subject necessarily could not
give the exact phraseology.

E. M. Bolinger, a son of Geo. Bolinger, testified that
he took a certified copy of the will to the First National
Bank of Paducah for his father. He gave his recollection
and construction of its contents. On cross-examination
he stated that he was then about ten or twelve years of
age, but later in another deposition said that he was
about seventeen or eighteen years of age. L. B. Ander-
son, the husband of one of William Bolinger's nieces,

testified to the contents of the will, but his testimony was based on a somewhat casual examination of the recorded copy, made thirty-five years before the testimony was given. He was then unmarried and had no interest in the will. The examination followed a conversation with reference to the disposition of the property, which he overheard. It was prompted by curiosity and was deficient in such purpose and interest as would likely produce a lasting impression.

Neither of the witnesses endeavored to give the exact language of the will. They testified to their recollection of its contents in their own language, or rather to their construction of its meaning. In addition, appellants proved by Julia Beadles, a sister of William Bolinger, that she had heard him say in substance that he wanted his wife well provided for "but at her death Nat Morse's folks not to get a dollar." Supporting this evidence it was shown that the corporations, in which the estate was invested, regularly paid the dividends to the executor or administrators, and in converting the investments the new stock certificates were issued in the name of the executor or administrator.

The testimony of the two witnesses, who attempted to give the contents of the will, in our opinion, is entitled to meager weight. Neither of them when examining the will possessed any knowledge of the technical construction of papers of that kind, and for that reason the testimony is essentially unreliable. It is also almost wholly valueless because it was based upon a cursory examination, made more than a quarter of a century ago. Such testimony, however scrupulously given as in this case, should be admitted with the greatest caution and should never be permitted to override relevant facts or circumstances tending to establish a contrary construction. The transposition of a clause or a word in a paper of this kind might affect or change the estate created. Plainly, therefore, it is not possible for one, so far removed from the date of a single inspection and not possessing technical knowledge pertaining to the use of words in creating different kinds of estates, to express an opinion of more than trivial value as to the character of estate devised.

After the death of William Bolinger the income was regularly paid to Nannie Bolinger. Geo. Bolinger began making payments as the dividends were declared and the practice was followed by Thomas Ligon and G. W. Ligon.

In the final settlement of the accounts of Thomas Ligon as administrator in 1895 it was recited that under the will Nannie Bolinger "was to receive the income of said estate for her support if same was sufficient and if same was not sufficient then enough of the principal to support her." This recorded construction is not a controlling circumstance but is significant and indicates that Thomas Ligon recognized that Nannie Bolinger had an absolute estate in the income. He was not acting as trustee but as administrator. He and his predecessor and his son, G. W. Ligon, all paid to Nannie Bolinger the entire income from the estate. Some of the appellants knew that she was accumulating the income and investing it in stocks in her own name. She believed that she had only a life estate in the corpus but that the income belonged to her absolutely, and no one questioned her right to it during the forty-three years following her husband's death; in fact, the executor and administrators seemed to recognize that right. There is no evidence, direct or inferential, tending to prove that any of the appellants ever questioned her absolute right to the income, but there are circumstances showing that they knew or must have known that she was saving it and investing it in her own name and as her own property. Consequently, there was an acquiescence on their part in her construction of her rights in that respect. This construction, indulged by her and those handling the estate, is, in our opinion, more efficacious evidence of the contents of the will than is possibly inferable from opinions based on a single examination of more than thirty years ago.

According to the contention of appellants, Nannie Bolinger had the right to dispose of the corpus of the estate, if necessary for her maintenance and support. She evidently knew that she had that right and also that she had an absolute estate in the income. She did not attempt to encroach on the principal but lived frugally and sought to save the income; she did accumulate a considerable sum, which she disposed of by her last will, believing, no doubt, in her right so to do. The remaindermen, during the years of her economies, seemingly construed her rights with regard to the corpus and the income as she construed them. In the absence of clear and definite evidence of the exact language contained in the will, from which the contention of appellants could be sustained, the construction recognized and adopted by the interested parties, as evidenced by the facts and circumstances in-

dicated, must determine the status of the accumulated income. In our view it was the property of Nannie Bolinger and passed under her will.

It is not a refutation of the conclusion reached to say that, inasmuch as Nannie Bolinger had the power to use the corpus of the estate, if necessary for her maintenance, it would have been unwise for appellants to question the payment of the entire income to her as it was earned. Her feeling for her husband's family was cordial, and her character was such that it cannot be presumed that she, in any event, would have attempted to violate the spirit and intent of her husband's will. Furthermore, the record shows that the entire income was voluntarily paid to her by the executor and administrators, and in the settlement referred to there seems to have been a distinct recognition of her right to an absolute estate in it. This recognition must have been based on a theretofore unquestioned construction of the will under which her right existed.

Nor can we concur in the argument that appellants are entitled to the property as a matter of justice, being the nearest of kin to William Bolinger. Even if William Bolinger did not want his wife's family to have any of his property, she was neither legally nor morally bound to respect that wish is disposnig of her own property, and this was her own property, the result of years of frugality, perhaps of some deprivations of pleasure. So aside from her legal right to dispose of it appellants have no paramount moral claim on it.

The construction that Nannie Bolinger, those in charge of William Bolinger's estate, and the appellants herein, placed on the will throughout the many years intervening between the death of William Bolinger and that of his wife is of too substantial effect to yield to the less reliable opposing evidence.

We hold that Nannie Bolinger had an absolute estate to the property devised by her to appellees and the judgments is, therefore, affirmed.